Good morning, honors. John Ray for Appellant Richard Johnson. May I proceed? Well, let's see. I want to make sure that Mr. Culpepper and Mr. Zappala and Mr. Switkes are here as well. And it looks like Mr. Zappala is here, so we'll go ahead and proceed with the next argument. It is Richard Christopher Johnson versus the City of Miami Beach and Christopher Aguila. And Mr. Ray, you're here with Mr. Culpepper, but you're presenting the argument on behalf of Ray. And Bradley Zappala is here along with Mr. Switkes, but Zappala is presenting the argument for the City of Miami and Christopher Aguila. So, Mr. Ray, you may proceed. Thank you, your honor. May it please the court. The Fourth Amendment protects against unreasonable seizures. The question here is whether a jury could find that Officer Aguila's strike was unreasonable when he struck a non-resisting and unarmed detainee. And if a reasonable jury could so conclude, that resolves both prongs of the qualified immunity inquiry. Because this court has held time and time again in Hadley v. Gutierrez, in Levy-Ferraro, that a single strike of a non-resisting detainee constitutes excessive force under the Fourth Amendment. Now, before getting into that excessive force analysis, I'd like to dive in a little bit to the facts of the case and interpret them in the light most favorable to Mr. Johnson, because the district court utterly failed to do so. The district court repeatedly resolved inferences in favor of Officer Aguila when Rule 56 required the district court to resolve inferences in favor of Mr. Johnson. And we submit that the video in this case is the case. The video unambiguously shows that Mr. Johnson was not threatening any officers. He wasn't trying to run away. He was being pushed backwards into a cell. And you can see that from that overhead camera of the cell, that Mr. Johnson continually is moving into the cell when he's struck by Officer Aguila. Now, the facts show that Mr. Johnson was not threatening any officers. He never said that he was going to hit one of them. He never lunged towards them. He never balled up his fist. All he did was be pushed backwards into the cell. And that's the moment at which Officer Aguila charged into the cell to strike Mr. Johnson. And Officer Mejia, the other officer on the scene, was there trying to shut the door to shut Mr. Johnson into a cell. But Officer Aguila was the one who put himself inside the cell with Mr. Johnson, and he's the one who struck Mr. Johnson. And when Mr. Johnson and Officer Aguila fell to the floor together, you can hear on the videotape the wails of Mr. Johnson. And you can hear him begging for Jesus to save him. And at that moment, Your Honors, a reasonable jury could conclude that Mr. Johnson was in fear for his life as the officers piled on top of him. Now, those are the facts from the videotape, and I'm sure Your Honors have all seen it, and there's multiple videotapes in this case. And so I'd like to kind of turn to those facts, take them and apply them to this excessive force framework that the Supreme Court requires to put it into a judicial framework, but we still must slosh to this fact-bound morass of reasonableness. And as the Supreme Court continually cautions, it's about comparing the need for the force against the actual force applied. And here we submit that there is no need for any force on Mr. Johnson. Now, there's three categories in the Graham factors that the Supreme Court has laid out. I'd like to talk through them. The first one is about the severity of the crime. As we argued in our opening brief, that's not particularly relevant here. And Officer Aguila and the city haven't really disputed that, so I'd like to set that to the side unless the court has specific questions on it. And focus on the two principles that Officer Aguila focuses on, which is whether Mr. Johnson was a threat to the officers and whether Mr. Johnson was attempting to flee and resisting arrest at the time. First, as to whether Mr. Johnson was a threat. There's no indicia that he was. Mr. Johnson was continually, never attempted to attack any officers. He never leaned forward to try to strike any of them, never said he was going to strike any of them. And so the Officer Aguila's actions simply weren't to protect any of the officers. And indeed, Mr. Johnson was unarmed. Mr. Zappola, it is his turn to present the argument on behalf of the city of Miami. He's going to say that when you look at that video, and we've all looked at that video, in the minutes leading up to bringing him into the cell, that he was disrespectful and that he bowed up to an officer and disobeyed the orders. Of the officers to get into the cell. And if that's the case, then he's not fully compliant, consistent with our clearly established law. So what do you have to say about that? Well, I have a couple of responses, Your Honor. First, verbal resistance alone is not enough to convert resistance into resistance that creates necessity for an officer to use force. And Mr. Johnson talked a big game. He would say, I don't have to do that. You know, they would say, take off your shoes. He would go, I don't have to take off my shoes, would immediately take off his shoes. At every step of the way, he complied with the officer's demands. And to the extent that the video is a little bit ambiguous, when he says, I don't want to go into the cell, and one of the officers grabs him and pushes him into the cell, that's for a jury to decide. And we think that the video doesn't show any resistance on the part of Mr. Johnson. But granted, the video is shaky at that point when Officer Mejia grabs him and pushes him into the cell. But the other five officers in the room didn't see any need to strike Mr. Johnson or bloody his face. It was only Officer Aguila and those other five officers were being reasonable. They said, let's get Mr. Johnson in the cell, shut the door and go on our way. And that's what Officer Mejia testified he was trying to do. He was trying to shut the cell door when Officer Aguila pushes him out of the way and charges into the cell. And so just because Mr. Johnson happened to be saying things or any of that, that's for a jury to decide. But more importantly, Your Honor, the point this court looks to is the point at which the officer applies force. And Officer Aguila continually points to things that happened beforehand and things that happened after the strike as if somehow it could justify the strike. But that's not what this court has repeatedly cautioned. It's that at the time of the strike, was Mr. Johnson resisting? And the answer has to be no. He was walking backwards into the cell and he had his hands out to his sides with his palms up. That can't be resisting an officer that's sufficient to punch someone in the face. And so Mr. Johnson was both not threatening and he wasn't showing any attempt to flee. And that's why excessive force here simply is easily met under the three Graham factors. Now, I'd like to discuss a little bit the question of clearly established law, because I think that the district court didn't reach this question. But we think that this court, at the very least, the district court's failure to consider the video constitutes a reason to remand and for the district court to reconsider the facts. But we think that this court on de novo review can decide it all and remand this case for trial. And so that requires this court to analyze the qualified immunity question and whether the law was clearly established, which the district court never reached. This court has talked about a number of different ways in which someone can analyze clearly established law and how courts do it. I'd like to focus on a couple here. One is if a principle from cases has been clearly delineated by this court. And the second is whether it was so obvious that every reasonable officer would be forced to conclude that this was impermissible. And both of those are met here. I'd like to start with talking about the first, which is case law that has clearly established a principle. And as I spoke about in the opening, there's a rich history of cases in the 11th Circuit that say that if someone is not resisting, then an officer cannot strike them. And one of the most on-point cases is Hadley v. Gutierrez, where an officer arrested someone, punched the arrestee in the stomach, and under the arrestee's version of facts, he wasn't resisting arrest. And this court said that it was not only that it was excessive force, but that it was clearly established excessive force and denied a defense of qualified immunity. And there, Hadley was strung out on cocaine and was arrested out in the field, running through a supermarket, knocking things off of shelves, and acting much more erratic than the mundane scene that we saw with Mr. Johnson. And this court still held that that was excessive force and that it was clearly established. And the rule that this court has said multiple times since then is that a single punch to a non-resisting detainee constitutes excessive force. And the court in Hadley looked back to Levy v. Ferraro, which looked back to Slicker v. Jackson, etc. There's multiple cases that show that in these circumstances, the case law is clearly established. So we think that there's a wealth of case law here, but there's also the fact that no reasonable officer could think that Officer Aguila's actions were justified. Certainly, the other five officers there did not see fit to charge into the cell to attack Mr. Johnson. And there's no evidence that there would be. And we submit that any officer in the country would look at this situation and say, there is no need to charge in and attack Mr. Johnson once he's inside the cell, moving farther into the cell, and another officer is trying to shut him inside the door. Now, my friend on the other side makes a large point about the fact that some of these cases were individuals with handcuffs and Mr. Johnson wasn't handcuffed. But I have a couple of points that I'd like to focus on there, Your Honors. The first is that Mr. Johnson was handcuffed earlier in the evening. He was handcuffed. He was put in a police cruiser. He was taken to a police station. And then the handcuffs were taken off of him and put inside a jail cell. And so simply because Mr. Johnson was in a more secure location and put inside a jail cell doesn't somehow mean that the officers can hide behind qualified immunity when a less secured individual, it would be constitutionally impermissible to strike them the way that Officer Aguila did. And so I think that that is one aspect to think about. But the other one is that this court has enunciated time and time again a principle that doesn't turn on whether someone was handcuffed or not. It turns on whether or not the individual is resisting arrest and attempting to flee. And in this situation, under the facts interpreted in the light most favorable to Mr. Johnson, that just isn't true. And so we ask this court to do what the district court did not do, which is interpret the facts in the light most favorable to Mr. Johnson. And we ask that this court reverse the case and remand for trial. And I would ask to reserve the balance of my time unless this court has any further questions. All right. Thank you, Mr. Ray. We'll hear from Mr. Zappola. Good morning, Your Honors. May it please the court. Bradley Zappola on behalf of the appellees, Officer Christopher Aguila and the City of Miami Beach. Appellees submit that the district court correctly analyzed the record and the undisputed material facts in this case and finding that Officer Aguila's use of force was objectively reasonable under the circumstances and granting summary judgment in favor of the appellees in the district court case. And we submit that this court should affirm that decision. Although this court has discretion to accept the district court findings of fact, the undisputed material facts that are established by the record in this case clearly dictate that the appellees are entitled to summary judgment here. There is no genuine issue of material fact that the force used by Officer Aguila here was reasonable. Where Officer Aguila used a single defensive strike to control a resisting subject and abate an imminent risk of harm to himself and his fellow officers. Appellant's arguments respectfully are flawed in both fact and law. From a case law standpoint, it is particularly telling that appellant relies solely on inopposite cases where force was used against a subject in handcuffs who was not resisting or struggling to support his position. From a factual standpoint, it is very telling here that appellant's position on appeal primarily relies on a number of what he contends are issues of material fact, all of which are demonstrably false. Specifically, appellant argues, one, that appellant complied with officer commands, quote, at every step of the way. Two, that appellant did not physically resist officers when they attempted to place him in a holding cell. Three, that appellant was, quote, complying with officers instructions at the point Officer Aguila struck him. Four, that appellant was restrained or fully secured at the time force was employed by Officer Aguila. Five, that appellant was in the center of the holding cell at the time Officer Aguila employed the force. The video evidence and undisputed facts on summary judgment conclusively disprove all of these alleged issues of material fact upon which appellant relies to substantiate his position here. Does the video not reflect that he was in the holding cell, in the middle of the holding cell when Officer Aguila rushed in? Respectfully, it does not, Your Honor. The video reflects that the appellant is just at the entrance of the holding cell, almost face to face with Officer Mejia. He is not in the middle of the holding cell whatsoever. Yes, but he's well within the cell. I mean, he's past the door. He's in the cell. Granted, Your Honor, he is a step within the cell. He may not be right in the middle, but he's more than just a little bit in the cell. He's flat in the cell. Appellees would submit that he was close enough to the entrance of the cell where through a swift move he could have easily obstructed any attempt to close the door or attack any of the officers who were standing. But he didn't do that. He didn't raise his hand. He didn't do anything. Your Honor, when he was... He's standing there and you actually see the officer come from the outside of the cell into it and hit him in the face. Your Honor, the officer's testimony, and you can see when the appellant is pushed towards the cell, he states, I'm not going in there. Officer Mejia grabs him and directs him just inside of the cell. He turns his entire body towards the officers. The testimony from the officer is that he balled his fist, but you can tell that he is not moving backwards or submitting to the officer's show of authority whatsoever, as the appellant asserts. He's face to face with the officers and can easily attack them. He takes not a submissive position at all, but an aggressive position towards the officers is our position. He does not raise his hand or move. Yes, Your Honor, the testimony of the officer was that he balled his fist and took a bladed stance. But the fists were low and you cannot see, and that was pointed out in our brief on summary judgment, that the video is inconclusive as to exactly what the appellant did with his hands. However, it is our position that what exactly he did with his hands is immaterial, given the other facts that are established in the record. But he's not moving. He's not raising his hands. He hasn't hit anybody prior to that time. I know he's got a mouth and he's said a lot of things, but he hasn't hit anybody prior to that, has he? Well, Your Honor, in the very outset of this matter, the appellant was actually arrested for resisting officers with violence, causing significant damages inside of a smoke shop where officers first encountered him. And officers were aware that he had already fought with officers in their initial attempt at... These officers at the jail weren't there for that, right? Yes, Your Honor. Officer Aguila was actually at the scene of the smoke shop and participated in transporting, ensuring that plaintiff was placed in a police car at the scene and then was transported to the jail, followed the transport car back to the jail to assist with the process. So the man that hit him was at the arrest scene? Yes, Your Honor. Was he convicted of the crime of resisting an officer with violence? Your Honor, that I'm not sure of. I believe that he was. I know that he was convicted of crimes in connection with this incident. I'm not certain if he was convicted of that specific crimes. I believe it was a plea. It ended in a plea that he accepted. Where did he plead to? Do you know where he pleaded to? I believe he pled to multiple offenses, but I cannot tell you, Your Honor, 100%. I don't want to make a misrepresentation. But in any event, I mean, you're seeing something different from the video than I think maybe I'm seeing. Your Honor, I think if we go through the analysis of the excessive force and the undisputed facts, no reasonable jury could conclude that this was unreasonable here or that the appellant was compliant with officers' commands. From the outset of the case, the appellant fought with officers at the initial scene, as I mentioned, refused to comply with standard commands throughout. When in processing, the appellant made belligerent and threatening statements to officers such as, I'm not scared of you by a long shot, buddy, and other similar statements. As they approached the cell door, the appellant specifically stated, I am not going in there, with respect to the cell, quickly turned his body towards officers and grabbed onto or pivoted himself onto the wall to make it difficult for officers to get him into the cell and tensed his body. So at that point, all of the facts leading up to this, and at that point, officers were objectively reasonable in assuming that this was a situation where there was an imminent threat to officers in the area of the appellant. He had shown a consistent willingness, unwillingness to comply with officer commands and a willingness to fight with officers. So when he was directed into the cell and told to go into the cell and did not do so, and basically stayed face-to-face with the officers as if he was going to take an aggressive act, as Officer Aguilar termed it, bowed up to the officers, it was not unreasonable for the officer to anticipate and to take action to ensure not only compliance, but the safety of the officers who were closest to him. Had he taken any physically aggressive acts towards any officer before that time? Yes, Your Honor. What were they? Physically aggressive? As I mentioned, in the smoke shop where he was initially arrested, he fought with officers. It actually required multiple officers to respond, to actually take him into custody and restrain him in handcuffs. He destroyed several glass pieces in the smoke shop. I believe it was four hookahs. But don't we have to accept his version of the facts for purposes of this motion, of resolving this motion? And that's not what he says happened. Your Honor, I believe that that part is undisputed, I believe. About how the glass was broken? He alleges that he bumped into the... Well, isn't that a different... I mean, that seems like a different story than that he's throwing glass at the officers. Not that he was throwing glass at the officers, but that it became rough inside of the hookah shop, where he wasn't easily taken into custody. But once he was at the jail, there's no physical movement toward any officers. I know he's got a mouth, and he keeps talking. Yes. Yes, I'm not going to do that. But in the jail, looking in the cell, etc., even when he goes to the side wall and doesn't go in the cell, he's not aggressive to the officers. Well, Your Honor... I mean, he doesn't raise his hand, he doesn't raise it at all, or do anything aggressive. Physically aggressive. At the jail. Based on his statements to the officers, and continued non-compliance, and the statements to the officers such as, I'm not scared of you by a long shot. And there were other statements made that were a bit profane, I'd rather not repeat in this proceeding, but they are in the record. There was indicia that the appellant did not have any intent of complying with the commands, and was willing to be aggressive towards the officers. So this wasn't an out of the blue intervention by the officer here. We submit it was reasonable for him to anticipate that the appellant had no intent of complying when he was at the entrance of that cell door, and posed an imminent risk to the officers in the vicinity. Additionally, he was unhandcuffed at that time, which presents more of a risk, of course. The video, and just to reiterate your honors, the appellant here, he's attempting to manufacture new issues of material fact on appeal, where he flatly contradicted, flatly stipulated to the contrary in the district court proceedings. For example, in response to, in his response in opposition to appellee's motion for summary judgment in the district court, appellant specifically admitted he was uncooperative and belligerent verbally and physically resisting officers, and refused to enter a holding cell following the booking process. In response to defendant's statement of facts in the district court, plaintiff specifically stated he did not dispute defendant appellee's statement, which is supported by the video evidence that after the processing search of plaintiff was completed, plaintiff was told that it was time to go into a holding cell. Officer Mejia began walking plaintiff towards a holding cell, at which time plaintiff told officer Mejia, I'm not going in there. In response to defendant's statement of facts in the district court, plaintiff specifically stated he did not dispute defendant's statement, which is supported by the video evidence that as plaintiff got near the entrance of the holding cell, he turned his body completely around to face officer Mejia, moved quickly away from the entrance of the holding cell with his back towards the wall, physically and verbally refusing to go in the cell. It was just seconds between those actions, and when officer Aguila employed the force. The plaintiff did not back into the cell and was not backing away from officers at the time the force was implied. Thus, we would submit that it was objectively reasonable for officer Aguila to intercede with a single strike, which was validated after the even more so after the Officer Mejia stated in his deposition that he could have simply closed the door before Aguila entered the cell. Is that, is that, I mean, that's, that's a clear fact. Is that erroneous? Yes, Your Honor, for a couple reasons. The video clearly shows that the plaintiff was a step away from officer Mejia right at the center of the cell. Of course, he could have attempted to close the door, but that does not preclude what could have happened if the appellant had launched towards him as a reasonable officer such as officer Aguila concluded that he appeared ready to do in that moment and under the circumstances. So you disagree with officer Mejia who said, I could have closed the door before Aguila entered the cell, but I didn't. Well, Your Honor, officer Mejia's deposition testimony is not quite as clear cut as the appellant would have the court believe. While he did reply, sure, quote unquote, sure, after he was shown a slow motion video of the incident and followed following repeated questioning as to whether he could have possibly closed the door had the interaction between officer Aguila and appellant not occurred. He initially testified that everything had evolved so fast and stated that it was, it's hard to say whether he could just have closed the cell door. And that's just a few pages prior to his deposition. Thus, we would argue that the testimony does not establish anything as speculative and from a different perspective than officer Aguila had also based on a review of the video in slow motion after the fact in a conference room rather than the perception in real time. And obviously, as the court knows, reasonable, this must be judged from the perspective of a reasonable officer on the scene rather than with the vision of 2020 hindsight. Thank you, Mr. Zappala and Mr. Ray you've reserved some time for rebuttal. Thank you, Your Honor, may it please the court. Before I get into the rebuttal I just like to focus on a couple of facts that the court was asking about that my friend on the other side wasn't sure about the charges were dropped about resisting arrest. And regarding the smoke shop incident I would ask the court, look at the video that that was on video it was a tiny smoke shop. They were turning around and knocked into a couple of things. I think that's a far cry from resisting arrest, but fundamentally, I think that the case comes down to the video, and this court has the video and there's a lot of videos in this case that capture, almost everything that happens between the parties. But the important one is that combined video that we submitted that shows the moment of the strike from multiple angles, and we think that that is conclusive and and shows that Mr. Johnson is entitled to relief, but at the very least, it creates a material dispute of fact as to what happened, such that this case should never have been rested from the jury's hands and decided by a judge on a rule 56 motion. And so I would ask that this court, not just remain the case to consider the video but I think that the court has the information that it needs here to decide the case fully and send the case to trial and to remain for trial. And so, unless the court has any questions. We would ask this court reverse and remain for trial. Thank you, Mr. Ray and Mr. Zafala. We have your argument. Thank you.